UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DEBORAH LOCASCIO, et al., | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | Civil Action No. 3:22-CV-0154-X |
| | § | |
| FLUOR CORPORATION, et al., | § | |
| | § | |
| *Defendants.* | § | |
| | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are two motions to dismiss for failure to state a claim under Rule 12(b)(6) [Doc. No. 40; Doc. No. 41]. For the reasons explained below, the Court **GRANTS** the motions. Summers will have twenty-eight days to file an amended complaint curing the deficiencies outlined in this order.

### I. Factual Background

Sometimes stocks underperform.[1] This is a putative class action lawsuit stemming from an alleged breach of fiduciary duty under the Employee Retirement Income Security Act of 1974 ("ERISA"). The named representatives of the putative class are Deborah Locascio and David Summers. The plaintiffs are former employees of Fluor Corporation ("Fluor") who previously participated in the Fluor Corporation Employees' Savings Investment Plan ("Plan") (collectively, "Plaintiffs"). The defendants are Fluor, the Fluor Corporation Benefits Administrative Committee

---

[1] *E.g.*, the Year of Our Lord 2022.

1

("Administrative Committee"), the Fluor Corporation Retirement Plan Investment Committee ("Investment Committee") (collectively, "Committees"), and Mercer Investments, LLC a/k/a Mercer Investment Management, who are members of the Committees or other fiduciaries of the Plan and whose names are currently unknown (collectively, "Defendants"). Plaintiffs specifically allege that the Plan fiduciaries violated ERISA by imprudently offering and retaining Custom Fluor Target-Date Funds ("Fluor TDFs"), a Custom Large Cap Equity Fund, a Custom Small/Mid Cap Equity Fund, and a Custom Non-U.S. Equity Fund (collectively, the "Challenged Funds").

      Based out of Irving, Texas, Fluor is a large engineering, procurement, and construction company that offers its employees an opportunity to save for retirement by contributing a portion of their pay to a fund, with matching contributions by Fluor. Fluor's retirement system—the Plan—offers participants multiple investment options in which they can direct their contributions, like the Custom Large Cap Equity Fund, the Custom Small/Mid Cap Equity Fund, and the Custom Non-U.S. Equity Fund. Different participants can have different returns based on where they direct their investments. One of the Plan's custom investment options is a suite of nine custom target date funds—the Fluor TDFs. BlackRock, Inc. ("BlackRock") manages the Fluor TDFs, which mirror the BlackRock LifePath Index Funds ("BlackRock TDFs") and consist of a diverse portfolio that becomes more conservative[2] as the target date approaches. The Plan has made the Fluor TDFs

---

[2] Fiscally—not politically—conservative. After all, it's BlackRock we're talking about here.

2

available since at least 2010, and the Custom Large Cap Equity Fund, the Custom Small/Mid Cap Equity Fund, and the Custom Non-U.S. Equity Fund since 2014 or earlier.

On March 1, 2017, Mercer agreed to provide consulting and certain investment services to the Plan and its participants. Mercer serves as the Plan's designated fiduciary investment advisor pursuant to ERISA section 3(38) and 29 U.S.C. sections 1002 and 1102.

When Plaintiffs recognized that the Plan was underperforming—at least according to their standards—they decided to sue. They claim that competent fiduciaries would not have retained the investments challenged in the complaint ("Challenged Investments"). Plaintiffs bring three counts: (1) breach of fiduciary duty, (2) failure to monitor fiduciaries and co-fiduciary breaches, and in the alternative, (3) liability for knowing breach of trust.

Count one of the complaint alleges that Defendants' conduct violated their fiduciary duties under Sections 404(a)(1)(A), (B), and (D) of ERISA, and 29 U.S.C. section 1104(a)(1)(A), (B), and (D) because Defendants failed to "discharge their duties with respect to the Plan solely in the interest of the Plan's participants and beneficiaries and [] for the exclusive purpose of [] providing benefits to participants and their beneficiaries."[3]

Count two of the complaint alleges that Fluor and the Committees breached their fiduciary monitoring duties by "[f]ailing to monitor and evaluate the

---

[3] Doc. No. 18 at 29.

performance of [their] appointees," "[f]ailing to monitor [their] appointees' fiduciary processes," and "[f]ailing to remove appointees whose performances were inadequate."[4]

Count three of the complaint alleges, "[i]n the alternative, to the extent that any of the Defendants are not deemed a fiduciary or co-fiduciary under ERISA, each such Defendant should be enjoined or otherwise subject to equitable relief as a non-fiduciary from further participating in a knowing breach of trust."[5]

Mercer and Fluor each move to dismiss Plaintiffs' complaint in its entirety for failing to state a claim upon which relief can be granted. Additionally, Fluor moves for dismissal under Rule 12(b)(1) stating that Plaintiffs lack Article III standing to pursue most of their claims.[6]

## II. Legal Standards

Under Federal Rule of Civil Procedure 12(b)(6), the Court evaluates the pleadings by "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff."[7] To survive a motion to dismiss, the plaintiff must allege enough facts "to state a claim to relief that is plausible on its face."[8] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

---

[4] *Id.* at 31.

[5] *Id.* at 32.

[6] Doc. No. 43 at 13.

[7] *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2020) (per curiam).

[8] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

4

alleged."[9]  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."[10] "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"[11]

"When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the Court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits."[12]  Article III, section 2 of the United States Constitution provides that the judicial power of the federal courts extends only to "cases" and "controversies."[13]  "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy."[14]

"To establish Article III standing, a plaintiff must show (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision."[15]  The burden of proving these elements is borne by the party invoking federal jurisdiction.[16] Even in class actions, the putative class representatives "must allege and show that

---

[9] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[10] *Id.*; *see also Twombly*, 550 U.S. at 545 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").

[11] *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. PROC. 8(a)(2)).

[12] *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

[13] U.S. CONST. art. III, § 2.

[14] *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016).

[15] *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157–58 (2014) (cleaned up); *see also Duarte ex rel. Duarte v. Lewisville*, 759 F.3d 514, 517 (5th Cir. 2014) (similar).

[16] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong."[17] "Where, as here, a case is at the pleading stage, the plaintiff must clearly . . . allege facts demonstrating each element."[18] "[G]eneral factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [courts] presum[e] that general allegations embrace those specific facts that are necessary to support the claim."[19] The injury-in-fact prong "helps to ensure that the plaintiff has a personal stake in the outcome of the controversy."[20]

## III. Analysis

### A. Standing

Fluor challenges Locascio's standing because she did not invest in any of the Plan's twelve options. It also challenges Summers's standing to bring all claims involving the nine Plan options in which he did not invest.

Plaintiffs participated in a defined-contribution plan, so they individually chose the amounts contributed, the fees incurred, and the investments selected. Therefore, the performance and fees of the investments *not selected* by a participant had no effect on the value of the participant's selected plan. However, even if they did, to establish Article III standing, Plaintiffs need to allege personal injury by each

---

[17] *Spokeo*, 578 U.S. 330 at 338 n.6.

[18] *Id.* (cleaned up).

[19] *Lujan,* 504 U.S. at 561 (cleaned up); *see also Ramming*, 281 F.3d at 161 ("Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief.").

[20] *Susan B. Anthony List*, 573 U.S at 158 (cleaned up).

6

challenged fund. By her own admission, Locascio cannot do this.[21]

The Fifth Circuit has not yet answered the question of whether personal investment is necessary, but it has left guideposts to inform an answer.[22] Specifically, the Fifth Circuit recognized that "[a] plaintiff must demonstrate standing for himself or herself, not just for others he or she professes to represent."[23] Plaintiffs attempt to overcome the individual injury by arguing a generalized injury to the Plan and its participants. But an injury to the Plan and its participants generally is insufficient under Article III to establish standing—Plaintiffs must allege an individualized and particular injury.[24] The burden of proving such an injury rests on the shoulders of Plaintiffs.[25] They do not carry that burden because they fail to demonstrate any injury to Locascio and only some injury to Summers.

For these reasons, the Court agrees with Fluor. Locascio suffered no injury, and therefore has no standing, because she invested in none of the twelve options of the Plan. So she pled her way out of court. Summers only has standing for claims involving the three Plan options in which he invested. Therefore, the Court **GRANTS** Defendants' Rule 12(b)(1) motion as to Locascio's standing and **DISMISSES** Locascio **WITHOUT PREJUDICE**. The Court also **DISMISSES WITHOUT PREJUDICE** Summers's claims concerning the nine investment options in which he did not invest.

---

[21] *See* Doc. No. 53 at 8.

[22] *See generally Perkins v. United Surgical Partners Int'l Inc.*, No. 3:21-CV-0973-X, 2022 WL 824839, at *3–4 (N.D. Tex. Mar. 18, 2022) (Starr, J.).

[23] *Ortiz v. Am. Airlines, Inc.*, 5 F.4th 622, 628 (5th Cir. 2021).

[24] *Perkins*, 2022 WL 824839, at *4.

[25] *See Lujan*, 504 U.S. at 561.

## B. Responsibilities of Fluor and Mercer

Before the Court addresses the breach of fiduciary duty claims, the Court must clarify Fluor's responsibilities because they differ throughout the timeline of events. Fluor claims that Plaintiffs cannot plausibly allege that Fluor breached any fiduciary duty after March 1, 2017, which is when Fluor appointed Mercer. Specifically, Fluor argues that it was no longer liable once Mercer assumed fiduciary responsibility for monitoring and deciding whether to retain or replace the Fluor TDFs and other investments. Fluor points to 29 U.S.C. section 1105(d), which says that "[i]f an investment manager or managers have been appointed[,] . . . no trustees shall be liable for the acts or omissions of such investment manager or managers, or be under an obligation to invest or otherwise manage any asset of the plan which is subject to the management of such investment manager."[26] Fluor refers to this provision as ERISA's "safe harbor" provision. Under this statute, Fluor believes it can only be responsible for Plaintiffs' claims concerning events that occurred before the appointment of Mercer. Nonetheless, Fluor concedes that "Fluor retained a limited duty to monitor Mercer as its appointee," but it argues that this "residual duty is much narrower than the primary fiduciary duty to select and monitor investments."[27] That residual duty, in practice, looks like "checking in with Mercer at 'reasonable intervals' to ensure it was carrying out its fiduciary responsibilities as intended."[28]

---

[26] 29 U.S.C. § 1105(d); *see also* 29 U.S.C. § 1105(c)(2) ("If a plan expressly provides for a procedure [that allocates fiduciary responsibility] . . . then such named fiduciary shall not be liable for an act or omission of such person in carrying out such responsibility[.]").

[27] Doc. No. 43 at 17.

[28] *Id.* (citing *Howell v. Motorola, Inc.*, 633 F.3d 552, 573 (7th Cir. 2011)).

Fluor ends this argument by stating that it never failed in this residual duty and, more importantly, that Plaintiffs failed to assert in any meaningful, non-conclusory way that Fluor breached its duty to monitor.

In response, Plaintiffs make two arguments. First, they argue that there is an exception to Section 1105(d)'s safe harbor for those who knowingly participated in a breach of fiduciary duty. Second, they again argue that Fluor failed to monitor Mercer. The Court rejects both arguments. Without even addressing whether initially investing and continuing to invest in the funds was prudent, Plaintiffs fail to plausibly allege knowing participation. Plaintiffs simply say that Fluor did not take remedial action to correct Mercer's decisions with the funds. This is not a plausible allegation of knowing participation in an act or omission they knew to be a breach of fiduciary duties. Simply put, Plaintiffs do not plead sufficient facts to plausibly allege a breach of fiduciary duty and therefore they cannot plead enough facts to plausibly allege knowing participation.

Regarding the second argument about the duty to monitor, Plaintiffs' argument again fails because it does not identify any flaws in Fluor's monitoring process, as discussed below. Relative unsuccess (or even utter unsuccess) of the funds does not necessarily indicate to a failure to monitor.

### C. Failure to State a Claim

Having separated the timelines of responsibility for the defendants, the Court now considers Defendants' Rule 12(b)(6) arguments. Defendants argue that Summers failed to state a claim under Rule 12(b)(6) because he did not plausibly

suggest that Defendants breached their fiduciary duties of prudence or loyalty. Since Summers's duty of prudence claims involve the same funds retained by Fluor and then by Mercer, the Court will analyze the alleged breach of fiduciary duty for both Defendants together.

### i. Count One: Breach of Fiduciary Duties of Prudence and Loyalty

The primary purpose of ERISA is to protect beneficiaries of employee retirement plans.[29] One of the ways in which it accomplishes this purpose is by imposing the fiduciary duties of prudence and loyalty. The duty of prudence requires that fiduciaries act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."[30] "[A] fiduciary normally has a continuing duty of some kind to monitor investments and remove imprudent ones."[31] Thus, "a plaintiff may allege that a fiduciary breached the duty of prudence by failing to properly monitor investments and remove imprudent ones."[32]

> The prudence standard normally focuses on the fiduciary's conduct in making investment decisions, and not on the results. But when the alleged facts do not "directly address[] the process by which the Plan was managed," a claim alleging a breach of fiduciary duty may still survive a motion to dismiss if the court, based on circumstantial factual

---

[29] *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 44 (1987).

[30] 29 U.S.C. § 1104(a)(1)(B); *Schweitzer v. Inv. Comm. of Phillips 66 Savs. Plan*, 960 F.3d 190, 196 (5th Cir. 2020), *cert. denied* 142 S. Ct. 706 (2021).

[31] *Hughes v. Nw. Univ.*, 142 S. Ct. 737, 741 (2022) (cleaned up).

[32] *Id.* (cleaned up).

allegations, may reasonably "infer from what is alleged that the process was flawed."[33]

Accordingly, to state a claim for breach of the duty of prudence, Summers may "allege facts sufficient to raise a plausible inference that . . . a superior alternative investment was readily apparent such that an adequate investigation would have uncovered that alternative."[34]  It is also relevant to note that "circumstances facing an ERISA fiduciary will implicate difficult tradeoffs, and courts must give due regard to the range of reasonable judgments a fiduciary may make based on her experience and expertise."[35]

Regarding imprudence, Summers focuses his claims on the Plan's custom investment options.[36]  These custom options include the Fluor TDFs (BlackRock TDFs) as well as the Custom Large Cap Equity Fund, the Custom Small/Mid Cap Equity Fund, and the Custom Non-U.S. Equity Fund.  The Defendants counter Summers's allegations by arguing that (1) Summers improperly claims imprudence based on the success of the investments rather than on how the fiduciary acted, and (2) Summers fails to allege facts from which the Court can reasonably infer that the process of offering or creating the customs options was flawed.  In other words, the Defendants argue that Summers cannot take the returns of a fund after a few years

---

[33] *Main v. Am. Airlines Inc.*, 248 F. Supp. 3d 786, 793 (N.D. Tex. 2017) (O'Connor, J.) (cleaned up).

[34] *Id.* (cleaned up).

[35] *Hughes*, 142 S. Ct. 737 at 742.

[36] Plaintiffs also allege that Mercer breached its fiduciary duty to the Plan by failing to replace the challenged investments.  Doc. No. 18 at 21.  The Court notes that Mercer cannot be liable for conduct that took place prior to March 1, 2017 when it was not a fiduciary for the Plan.  However, the Court makes no comment on Fluor's role as a fiduciary after March 1, 2017.

and compare it to other funds that outperformed his. Instead, the argument goes, Summers must argue that the processes were imprudent. The Defendants say that Summers cannot compare one investment to another with the benefit of hindsight.

In response, Summers focuses on the Court's ability to infer that a process for monitoring investments was flawed. Regarding Fluor's pre-2017 conduct, Summers argues that "Fluor originally chose the Challenged Investments and retained them through the portion of the Class Period prior to Mercer's hiring, and, in doing so, failed to properly investigate alternatives despite each fund displaying a clear pattern of underperformance."[37]

Regarding Fluor's post-2017 conduct, Summers argues that the same "neglect continued"[38] and that "Fluor failed to prudently monitor Mercer."[39] Yet despite again making these allegations, Summers fails to point to pleadings that allow the Court to infer imprudence. Yes, the Court accepts all well-pled facts as true and construes them in the light most favorable to Summers, but it "do[es] not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions."[40] Summers consistently asserts conclusory allegations without directing the Court to pleadings that would allow the Court to make an inference of imprudence. Summers's response is full of relevant law—for example, Summers writes, "[t]he relevant inquiry at this stage is whether the Plan's fiduciaries engaged in a prudent

---

[37] Doc No. 53 at 20.

[38] *Id.*

[39] *Id.* at 21.

[40] *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007).

monitoring process throughout the proposed Class Period to ensure the Challenged Investments remained appropriate for the Plan."[41] This is good law, yet instead of directing the Court to any plausible facts about how the defendants did not engage in a prudent monitoring process, Summers simply says that his "allegations set forth unavoidable indicia of the imprudence of retaining the Challenged Investments."[42] After diligent searching, the Court cannot find plausible allegations in the amended complaint.

Regarding Mercer's post-2017 conduct (as well as Fluor's continuing duty to monitor), Summers argues much of the same, but hones in on what he alleges to be consistent underperformance of the Fluor TDFs and the other Challenged Investments. He argues that Mercer's decisions to maintain the Fluor TDFs and other Challenged Investments (and Fluor's roundabout duty to monitor Mercer's decision to maintain the Fluor TDFs and other Challenged Investments) constituted breach of Mercer's fiduciary duty. Based on the pleadings and relevant law, he is wrong. In order to demonstrate a lack of prudence, Summers must demonstrate "conduct, not results" of the fiduciary's actions towards the investments.[43] "The focus of the inquiry is 'how the fiduciary acted,' not 'whether his investments succeeded or failed.'"[44] To make this evaluation, a plaintiff must point to information "at the time

---

[41] Doc. No. 53 at 23.

[42] *Id.* at 24.

[43] *Kirschbaum v. Reliant Energy, Inc.*, 526 F.3d 243, 253 (5th Cir. 2008).

[44] *Id.* (cleaned up).

of the investment without the benefit of hindsight."[45]   Summers fails to provide information that would enable the Court to evaluate Defendants' process and conduct for selecting the investments that he did.  Providing the Court with data from other investments that outperformed the Fluor investments does little to aid the Court in evaluating the fiduciary process.  Put bluntly, a flawed fiduciary process can result in great returns while a diligent and complete fiduciary process can result in underperformance.  For this reason, the Court cannot reasonably infer the fiduciary process was flawed based on the alleged facts.

Now, meaningful benchmarks for comparison are important, and, in similar cases, some courts have required plaintiffs alleging breach of fiduciary duty to "provide a sound basis for comparison—a meaningful benchmark" to show that a prudent fiduciary in like circumstances would have acted differently.[46]  So what is a meaningful benchmark?  The Fifth Circuit has yet to define it exactly, but clues that guide the definition exist in different courts.  For example, courts have reasoned that distinguishing between actively and passively managed accounts is important to determine a meaningful benchmark.[47]  Additionally, benchmark funds with similar investment strategy can aid in an analysis of a meaningful benchmark.[48]  The crux

---

[45] *Metzler v. Graham*, 112 F.3d 207, 209 (5th Cir. 1997).

[46] *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 822 (8th Cir. 2018); *see also Smith v. CommonSpirit Health*, 2021 WL 4097052, at *7 (E.D. Ky. Sept. 8, 2021) ("[I]t is not unduly onerous to require plaintiffs to plead facts showing underperformance relative to a viable benchmark.").

[47] *See, e.g.*, *Perkins*, 2022 WL 824839, at *6; *see also, e.g.*, *Parmer v. Land O'Lakes, Inc.*, 518 F. Supp. 3d 1293, 1303 (D. Minn. 2021); *Davis v. Salesforce.com, Inc.*, No. 20-cv-01753-MMC, 2020 WL 5893405, at *3 n.9 (N.D. Cal. Oct. 5, 2020).

[48] *See, e.g.*, *Meiners*, 898 F.3d at 823 (finding that comparing funds with differing investment strategies "does not establish anything about whether [certain funds] were an imprudent choice").

of Summers's pleading issue lies in the fact that "simply labeling funds as 'comparable' or 'a peer' is insufficient to establish that those funds are meaningful benchmarks against which to compare the performance of" the allegedly imprudent funds.[49]  Summers needs to provide meaningful comparison in his pleadings to demonstrate that his selected funds are sufficiently similar benchmarks.  From here, Summers can more accurately analyze the process by which the Defendants selected and retained the Fluor TDFs and the other Challenged Investments.

Accordingly, the Court agrees with the Defendants that Summers has failed to plead sufficient factual allegations.  The Court **GRANTS** the motion on this ground and **DISMISSES WITH PREJUDICE** this claim.  However, because Summers may be able to cure these deficiencies with an amended complaint, the Court grants Summers twenty-eight days to do so.

Regarding the duty of loyalty for both Fluor and Mercer, the Court agrees with Defendants that Summers failed to plead facts showing a plausible claim of fiduciary disloyalty.  To demonstrate disloyalty, a plaintiff must show that a fiduciary failed to "discharge [their] duties with respect to the plan solely in the interests of the participants and beneficiaries and[] for the exclusive purpose of[] providing benefits to participants and their beneficiaries[] and[] defraying reasonable expenses of administering the plan."[50]  Instead, Summers simply alleges that Mercer did not remove the Fluor TDFs from the Plan because doing so "would conflict with its

---

[49] *Anderson v. Intel Corp.*, No. 19-CV-04618-LHK, 2021 WL 229235, at *8 (N.D. Cal. Jan. 21, 2021).

[50] 29 U.S.C. § 1104(a)(1)(A).

business relationship with BlackRock."[51] Again, Summers must do more than conclude that because Mercer has a relationship with BlackRock it necessarily infringed on its duty of loyalty by maintaining the Fluor TDFs. To survive this motion to dismiss, Summers must plead specific facts regarding the breach of the duty of loyalty without simply recycling what he already stated regarding the duty of prudence. Accordingly, the Court **GRANTS** the motion as to this claim and **DISMISSES WITH PREJUDICE** this claim. Summers shall have twenty-eight days to amend his pleadings to address these deficiencies.

### ii.   Count Two: Duty to Monitor

Lastly, Fluor argues that Summers's claim for a breach of the duty to monitor fails because Summers misunderstands the breadth of the duty to monitor and does not allege facts that support such an allegation. The Court agrees.

After Fluor appointed Mercer to manage the funds, its duties decreased to checking in with Mercer at reasonable intervals to ensure that it was fulfilling its duties. Summers's allegations revolve around why Fluor did not question why Mercer maintained the Challenged Funds as part of the plan. However, the allegations are so threadbare that the Court cannot infer Fluor's failure to monitor. For the Court to infer a failure to monitor, it would need to not only see facts showing instances of insufficient monitoring, but it would also need to see facts that demonstrate why sufficient monitoring would have caused Fluor to ask Mercer to replace certain TDFs. In sum, there are simply not enough facts to state a claim for relief that is plausible

---

[51] Doc. No. 18 at 22.

on its face. The Court **GRANTS** the motion as to this claim and **DISMISSES WITH PREJUDICE** this claim. Summers shall have twenty-eight days to amend his pleadings to address these deficiencies.

### IV. Conclusion

The Court **GRANTS** the Defendants' motions to dismiss. The Court **DISMISSES WITHOUT PREJUDICE** Locascio's claims because she lacks standing, and the Court **DISMISSES WITHOUT PREJUDICE** Summers's claims concerning the nine investment options in which he did not invest. The Court **DISMISSES WITH PREJUDICE** Summers's claims concerning the investment options in which he did invest. Regarding those claims, because Summers's deficiencies outlined in this order could possibly be cured by amendment, Summers may amend his complaint within twenty-eight days of this order. Summers may make no other changes than the ones this order addresses.

**IT IS SO ORDERED** this 18th day of January, 2023.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE